D. E. FOOTE & CO., A CORPORATION, ET AL.

*vs.*

EMERSON C. HARRINGTON, GOVERNOR OF THE STATE
OF MARYLAND, HUGH A. McMULLEN, COMPTROLLER
OF THE STATE OF MARYLAND, AND JOHN M.
DENNIS, TREASURER OF THE STATE OF
MARYLAND.

*Mandamus: State officials; discretionary matters. Constitu-
tion, Article 3, section 33: refunding money paid to State;
discretion of Governor and State's financial
officers; not reviewable.*

A mandamus will lie to compel State officials to perform
purely ministerial acts; but where the act to be performed re-
quires discretion the writ will not issue, except to compel them
to act, and the courts will not review the exercise of their discre-
tion.                                                      p. 126

By "ministerial" in this sense is meant that the officers are
entrusted with the performance of an absolute and imperative
duty, the discharge of which requires neither official discretion
nor judgment.                                             p. 127

Section 33 of Article 3 of the State Constitution, in declar-
ing that the General Assembly shall pass no law refunding

money paid into the State Treasury * * * unless recommended by the Governor or officers of the Treasury Department, did not impose upon such officers the mere ministerial duties of certifying to the correctness of accounts, etc., but commits to them, as the financial officers of the State, familiar with its affairs, the discretion as to what action should be taken.  p. 130

The writ of mandamus should not issue to compel the Governor, Comptroller and Treasurer to recommend the refunding to certain oyster packers of the taxes that had been paid by them under Acts since declared by the Supreme Court of the United States to have been unconstitutional.              p. 130

*Decided June 22nd, 1916:*

Appeal from the Baltimore City Court.  (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*W. Thomas Kemp* and *George Whitelock* (with a brief by *Whitelock, Deming & Kemp* and *Rignal W. Baldwin*), for the appellants.

*Albert C. Ritchie, the Attorney-General,* for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This appeal is from an order dismissing a petition for a writ of mandamus to require the appellees to recommend to the General Assembly the passage of a law refunding to the appellants taxes paid by them under a law subsequently held unconstitutional.

The General Assembly of 1910 passed two Acts relating to taxes on oysters. Chapter 735 (p. 211), among other things, imposed a tax of two cents a bushel on all oysters sold by commission merchants and others selling by less than the cargo. This Act was tested as to its constitutionality and was held by this Court to be unconstitutional because a restriction upon interstate commerce, and as not coming within the provision of section 10, Article 1 of the Constitution of the United States, whereby the States are authorized to impose import or export duties sufficient for their inspection laws because on its face it disclosed the fact that the whole tax was not to be used for the expenses of the execution of the law, but one-half was to be used for reshelling the oyster bottoms of the State. *Foote* v. *Clagett,* 116 Md. 228.

Chap. 413 (Acts of 1910) by sec. 69 (p. 209) imposed a tax of one cent a bushel "upon all oysters unloaded from vessels at the place where said oysters were to be no further shipped in bulk in vessels," the tax to be borne equally by the seller and the buyer but to be paid by the buyer. This Act was also tested as to its constitutionality; and in *Foote* v. *Stanley,* 117 Md. 335, this Court held the tax valid. The Supreme Court of the United States, however, in 232 U. S. 494, reversed the decree of this Court upon the ground that there was a failure to show that the amount collected was not in excess of that required for the inspection, and was therefore a burden upon interstate commerce.

From the date of the decree of this Court upholding the constitutionality of the tax until the reversal by the Supreme Court the appellants, who are oyster packers, paid the tax as imposed under protest. After the reversal the appellants sought to have the taxes paid by them refunded; and to that end prepared a bill to be introduced in the General Assembly and sent a draft of it to the State Comptroller with the request for his approval of it. Later the appellants, with counsel, appeared before the Board of Public Works at a special meeting called for the purpose of considering these

claims and urged upon those officials, Governor, Treasurer and Comptroller, their approval of the bill. The recommendation of these officials of course was requisite for a bill of this character by virtue of Article 3, section 33 of the State Constitution which provides: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, viz: * * * refunding money paid into the State Treasury, * * * unless recommended by the Governor or officers of the Treasury Department."

The Governor, Treasurer and Comptroller refused to recommend the passage of the bill and thereupon the petition for a writ of mandamus was filed, alleging therein the facts as we have above enumerated them and praying that the appellees might be ordered to certify to the correctness of the claim of the appellants, and to recommend to the General Assembly the passage of a bill to refund the same to the appellants.

There is no dispute between the adverse parties as to the law governing the writ of mandamus as held by a long line of decisions in this State, but the difficulty lies rather in the application of the conceded law. For instance, it is not disputed that mandamus will lie to compel State officials to perform purely ministerial acts, but where the act to be performed requires discretion, mandamus will not lie further than to compel them to exercise their discretion. In other words where the act to be performed requires the exercise of judgment and discretion and the officers charged with the exercise of that judgment and discretion refuse to act at all, the Courts will require those officials to exercise their discretion, but will not control or review the decision made. The principle is clearly stated by JUDGE SCHMUCKER in delivering the opinion of this Court in *Henkel* v. *Millard,* 97 Md. 24: "It is well settled in this State that although the Courts will in a proper case exercise their mandatory power to require a public official to perform a strictly ministerial act or to exercise a discretion conferred upon him by the law,

they will not interfere with or control the method of the exercise of such discretion or of the performance of any duty requiring the exercise of judgment or discretion nor will they correct errors of judgment or discretion which have been honestly made in the discharge of such duty. *Brown* v. *Bragunier,* 79 Md. 236; *State* v. *Latrobe,* 81 Md. 233; *Wailes* v. *Smith,* 76 Md. 477; *Madison* v. *Harbor Board,* 76 Md. 395; *Wiley* v. *School Commissioners,* 51 Md. 404; *Alberger* v. *Baltimore,* 64 Md. 6."

In this case the officers having acted it is only necessary to inquire whether the constitutional duty imposed upon them is a ministerial or a discretionary one. And CHIEF JUDGE ROBINSON, in *Wailes* v. *Smith,* 76 Md. 469, has defined ministerial and discretionary duties within the meaning of the rule: "And by 'ministerial' we mean where one is intrusted with the performance of an absolute and imperative duty, the discharge of which requires neither the exercise of official discretion nor judgment. As, for instance, where a specific sum of money is appropriated by law for the payment for certain defined services rendered the State no one questions that in such a case the payment for such services by the proper officer may be enforced by mandamus. Where, however, the duty is one which necessarily requires the exercise of discretion and judgment, it is well settled that a mandamus will not lie to control or reverse the decision of one to whom the discharge of such duty is confided. It will not lie because it is his discretion and judgment which are to be exercised and not the discretion and judgment of the Court. But whilst this distinction will be found to run through all the cases there is, it must be admitted, some conflict of opinion in this country at least as to what constitutes, strictly speaking, a ministerial duty as distinguished from a discretionary duty within the meaning of the rule, and it may not be easy to reconcile the principles which are supposed to govern these decisions. Be that as it may, we take it to be settled by the best considered cases that where

the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact, such a duty is not ministerial, and not being ministerial, the decision of a public officer to whom the discharge of such duty has been confided can not be reviewed or reversed in a mandamus proceeding."

In the answer filed by the appellees to the petition all of the above stated facts were admitted, but by the eighth paragraph of the answer they alleged: "The defendants did carefully and thoroughly consider and deliberate upon the propriety and the advisability of recommending said refund, and their refusal to do so was the result of the exercise by them of their *bona fide* judgment and discretion in the premises formed after hearing the statements of facts and arguments submitted to them by the petitioners and their counsel at a formal hearing and based upon their consideration of said statements of facts and arguments and upon their decision with respect to the law and the facts involved." And by the ninth paragraph they averred: "These defendants say that in the present case they heard the statements of law and facts submitted to them at a formal hearing by the petitioners and their counsel; they considered and advised with the Attorney-General of the State as to the scope and effect of the litigation aforesaid in the Court of Appeals of Maryland and in the Supreme Court of the United States, and as to the legal rights of the petitioners to the refunds for which they asked; they considered the fact that a large number of buyers of oysters, other than the petitioners, who had paid similar taxes were not asking for any refunds at all; they considered the fact that even if they recommended a refund to the petitioners of only one-half of the amounts asked for in Petitioners' Exhibit B, which one-half would represent the one-half of the taxes with which the petitioners under the law were charged, and not the other half which the petitioners had collected from the sellers (which former one-half the petitioners informed these defendants would be accept-

able to them), that nevertheless the sellers who had paid the other one-half to the petitioners, as well as other sellers, would receive no refund thereof at all and who these sellers were these defendants did not and do not know and the State records do not disclose; they considered whether or not the taxes in question had really been included in the prices charged and received by the sellers of the oysters to the petitioners, and in the prices charged by the petitioners and other buyers when the oysters were in turn sold or disposed of by them, and whether the petitioners and other buyers and the sellers had all been reimbursed in that way; and these defendants considered all other facts and circumstances connected with the refunds asked for; and as the result of all of which these defendants refused to recommend to the General Assembly the said refunds and such refusal was the result of the exercise by these defendants of their *bona fide* judgment and discretion in the premises, reached after careful and thorough examination and consideration as aforesaid of all the facts, circumstances and questions of law involved, and such refusal and decision is not subject to review by this Honorable Court, and can not be reversed by this Honorable Court through the process of mandamus."

To these two paragraphs the appellants demurred and upon the demurrer being overruled and the plaintiffs declining to make further replication it was ordered by the Court below that the petition be dismissed.

Unquestionably this provision of the Constitution was placed therein as a safeguard upon the State Treasury, and while the appellants admit that this was its purpose, they contend, nevertheless, that the only meaning to be attributed to the use of the word "recommended" is that the Governor or the officers of the Treasury Department are to certify to the correctness of the amount for which a refund is claimed if found to be correct. And they argue that in the present case the appellees having admitted the amounts to be correct have nothing more to do other than to so certify. We

.can not agree that this limited construction should be placed upon such an important provision of the Constitution. We are strongly of the opinion that the framers of the Constitution had in mind more than a mere intention to see that accounts were verified. It must have been that when this duty was assigned to such high State officials that it was done because they were the financial agents of the State government and therefore obliged to be familiar with all questions relating thereto, and were best qualified of any persons in the State to pass upon questions of refunds. Some of the questions examined by them as set out in the ninth paragraph of the answer were very pertinent. For instance that they considered the fact whether or not the appellants had not in fact already been actually reimbursed for the taxes which they had paid by including in the price at which they resold the oysters an amount sufficient to cover such payments. If such charge were in fact made then there would be no moral obligation upon the part of the State to repay, nor, equally, would there be any moral right on the part of the appellants to claim repayment. These and other reasons compel the opinion that in a case of these facts the duty assigned was a discretionary one and not a ministerial one, and therefore mandamus will not lie.

*Order affirmed, with costs.*